**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

SAUL ISAAC HERNANDEZ FLORES,

Petitioner,

v.

CHRISTOPHER J. LAROSE, et al.,

Respondents.

Case No.:  3:25-cv-03023-RBM-DDL

**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

**[Doc. 1]**

Pending before the Court is Petitioner Saul Isaac Hernandez Flores's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") challenging the lawfulness of his detention by the United States Department of Homeland Security ("DHS").  (Doc. 1.)  For the reasons set forth below, the Petition is **GRANTED IN PART AND DENIED IN PART**.

## I.    BACKGROUND

Petitioner, a citizen of Mexico, entered the United States in or around 2006[1] without

---

[1]  The Court notes that the Notice to Appear, issued to Petitioner on a DHS Form I-862, states that he entered without inspection on January 1, 2009.  (*See* Doc. 6-1, Ex. 1 at 3.)

1

being admitted or paroled. (Doc. 1 ¶¶ 9, 22, 24.)[2] In 2022 and 2023, Petitioner was convicted of driving under the influence. (*Id.* ¶ 22.) On October 28, 2025, Petitioner was detained by unknown men in two unmarked vehicles while he was driving. (*Id.* ¶ 26.) Petitioner alleges that his immigration record "does not reveal any arrest warrant justifying [his] detention." (*Id.*) He remains detained at the Otay Mesa Detention Center. (*Id.* ¶ 1.)

On the day of his arrest, DHS issued a Notice to Appear ("NTA") charging Petitioner with removability under § 212(a)(6)(A)(i) and § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") as a noncitizen "present in the United States without being admitted or paroled" and "who, at the time of application for admission, is not in possession of a valid . . . entry document." (Doc. 6-1, Ex. 1 at 3, 6.) "Petitioner concedes removability," but claims he "qualifies to apply for cancellation of removal and withholding." (Doc. 1 ¶¶ 24–25.) On November 10, 2025, an immigration judge denied Petitioner's bond request solely based on a finding that the immigration court "lacks jurisdiction to consider [Petitioner's] custody status." (Doc. 6-1, Ex. 2 at 8 (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)).)

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

---

[2] The Court cites the paragraph numbers of the Petition and the CM/ECF electronic pagination for other citations unless otherwise noted.

3:25-cv-03023-RBM-DDL

### III.    DISCUSSION

Petitioner claims his continued detention is governed by 8 U.S.C. § 1226(a), as opposed to 8 U.S.C. § 1225, which in the absence of a bond hearing and decision on the merits violates: (1) the INA; (2) the Administrative Procedure Act ("APA"); and (3) the Fifth Amendment's Due Process Clause.  (Doc. 1 ¶¶ 28–39.)  Respondents argue that Petitioner: (1) is jurisdictionally barred from bringing his claims under 8 U.S.C. § 1252(g) and § 1252(b)(9); (2) failed to exhaust administrative remedies; and (3) is legally detained under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2).  (Doc. 6 at 6–13.)

For the reasons discussed below, the Court has jurisdiction over Petitioner's claims because the Petition challenges the legality of his ongoing detention without a bond hearing.  The Court also finds Petitioner is subject to the discretionary detention procedures under 8 U.S.C. § 1226(a).

### A.    Jurisdiction

As the Court has an obligation to "determine that [it has] jurisdiction before proceeding to the merits" of any case, it will first address Respondents' jurisdictional arguments.  *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

### 1.    8 U.S.C. § 1252(g)

Respondents argue that the Court lacks jurisdiction to hear this Petition under 8 U.S.C. § 1252(g).  (Doc. 6 at 6–7.)  This statutory bar against judicial review precludes the Court from exercising jurisdiction over the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]."  8 U.S.C § 1252(g).  The Supreme Court has narrowly interpreted § 1252(g) as applying "only to [those] three discrete actions that the Attorney General may take."  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis omitted) (quoting 8 U.S.C. § 1252(g)).

In this case, Petitioner does not challenge the decision to commence removal proceedings or any act to execute a removal order.  Petitioner concedes removability (Doc. 1 ¶ 24) and instead challenges his "continued detention under Section 1226(a) in the

3

absence of a bond hearing and decision on the merits." (*Id*. ¶¶ 30, 39.) Petitioner is therefore enforcing his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, Case No.: 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *4 (S.D. Cal. Sept. 3, 2025) (emphasis in original); *see Chavez v. Noem*, — F. Supp. 3d — 2025 WL 2730228, at *3 (S.D. Cal. Sept. 3, 2025); *United States v. Hovespian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (noting a "district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question . . . forms the backdrop against which the Attorney General later will exercise discretionary authority"). Accordingly, § 1252(g) does not strip the Court of jurisdiction.

### 2. 8 U.S.C. § 1252(b)(9)

Respondents argue that 8 U.S.C. § 1252(b)(9) bars judicial review of Petitioner's habeas claims because he challenges the basis of his detention, and the exclusive means of judicial review of such claims is a petition for review to a court of appeals. (Doc. 6 at 7–9 (citing *Reno*, 525 U.S. at 483).)

Under this statute, judicial review of "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove [a noncitizen] from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). Section 1252(b)(9), however, was "intended to 'channel judicial review over final orders of removal to the courts of appeals,' not 'foreclose all judicial review of agency actions' touching on deportation proceedings writ large." *Salvador v. Bondi*, Case No. 2:25-cv-07946-MRA-MAA, 2025 WL 2995055, at *4 (C.D. Cal. Sept. 2, 2025) (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)). The Supreme Court has "explained that practically any question of fact or law related to immigration detention technically 'aris[es] from' actions taken to remove a noncitizen 'in the sense that the [noncitizen's] injuries would never have occurred if they had not been placed in detention.'" *Salvador*, 2025 WL 2995055, at *4 (quoting *Jennings*, 583 U.S. at 293). In

rejecting such an expansive interpretation of § 1252(b)(9), the Supreme Court reasoned:

> Interpreting 'arising from' in this extreme way would . . . make claims of [unlawful] detention effectively unreviewable.  By the time a final order of removal was eventually entered, the allegedly [unlawful] detention would have already taken place.  And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review.

*Jennings*, 583 U.S. at 293.

This logic applies equally here.  As discussed above, Petitioner challenges the legality of his continued detention rather than a final order of removal.  Accordingly, § 1252(b)(9) does not strip this Court of jurisdiction.  *See Salvador*, 2025 WL 2995055, at *5 (rejecting similar argument under § 1252(b)(9); *Noori v. Larose*, Case No.: 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *7 (S.D. Cal. Oct. 1, 2025) (same).

### 3.    Exhaustion

Respondents argue that the Court "should ensure Petitioner properly exhausts administrative remedies."  (Doc. 6 at 9 n.2.)  "Exhaustion can be either statutorily or judicially required."  *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). While 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus," the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241."  *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001) (cleaned up).  However, the Court "may waive the prudential exhaustion requirement if administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void."  *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (cleaned up).

"The Court, following other courts in this District, finds that exhaustion would be futile because the [BIA] is obligated to apply the binding precedent of *Matter of Yajure Hurtado*, 29 I & N. Dec. 216 (BIA 2025) to find that detention is mandatory under 8 U.S.C.

3:25-cv-03023-RBM-DDL

§ 1225(b)(2)." *Esquivel-Ipina v. LaRose*, Case No.: 25-CV-2672 JLS (BLM), 2025 WL 2998361, at *3–4 (S.D. Cal. Oct. 24, 2025); *see Garcia*, 2025 WL 2549431, at *4–5 (same); *Chavez*, 2025 WL 2730228, at *3–4 (same).  The Court therefore finds that the prudential exhaustion would be futile and it has jurisdiction to hear this Petition.

**B.    Mandatory or Discretionary Detention**

Petitioner claims his detention is governed by § 1226(a)'s discretionary detention procedures, and his continued detention without a bond hearing therefore violates the INA, the APA, and the Fifth Amendment's Due Process Clause.  (Doc. 1 ¶¶ 1, 14, 29–30, 33–36, 38–39.)  Respondents argue Petitioner is lawfully detained because he is subject to mandatory detention under § 1225.  (Doc. 6 at 10–13.)  For the reasons stated below, the Court agrees with Petitioner.

The statutory provision governing Petitioner's detention determines the procedures Respondents must follow and the level of process Petitioner is afforded.  Under 8 U.S.C. § 1225(b)(2), noncitizens are subject to mandatory detention without eligibility for bond. *See Sequen v. Albarran*, — F. Supp. 3d —, 2025 WL 2935630, at *1 (N.D. Cal. Oct. 15, 2025) (noting that detention under § 1225(b)(2) is mandatory unless a limited exception for humanitarian parole applies).  The great weight of district courts have interpreted § 1225(b)(2)(A) to apply when a noncitizen is: "(1) an applicant for admission; (2) seeking admission; and (3) not clearly and beyond a doubt entitled to be admitted." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025).  An applicant for admission is a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted.'" *Jennings*, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(1)).  All applicants for admission "shall be inspected by immigration officers" to assess whether they may be admitted.  § 1225(a)(3).  "[I]f the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained." § 1225(b)(2)(A).

In contrast, Section 1226(a) applies to noncitizens who are "detained pending a decision on whether the [noncitizen] is to be removed from the United States."  As long as

the detained noncitizen is not subject to § 1226(c)—which requires mandatory detention for noncitizens who have been charged with certain crimes—the Attorney General may release the noncitizen on "bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)–(2). Release is proper where the noncitizen "satisfies [the government] that [he] will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(a)(4). The noncitizen has a right to contest the initial custody determination—the denial or amount of bond—before an immigration judge. 8 C.F.R. § 1236.1(d)(1); *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 951 (9th Cir. 2008) ("§ 1226(a) must be construed as *requiring* the Attorney General to provide the [noncitizen] with such a hearing").

"Recently, numerous courts across the nation have considered the applicability of [Section 1225(b)] versus Section 1226(a) for noncitizens who have continuously remained in the United States for longer than two years—or even decades—but had not previously sought admission." *Martinez Lopez v. LaRose*, Case No.: 25-cv-2717-JES-AHG, 2025 WL 3030457, at *4 (S.D. Cal. Oct. 30, 2025) (agreeing with the majority of other district courts and "finding that Section 1226(a)—rather than Section 1225(b)(2)(A)—applies" to a similarly situated petitioner) (collecting cases).[3]   In *Rodriguez*, the court held that noncitizens who entered the United States without inspection but were "residing in the United States" and "not apprehended upon arrival" are subject to § 1226's discretionary detention procedures. 2025 WL 2782499 at *21–23, 27. The court reasoned § 1225(b)(2) requires that the noncitizen be "seeking admission," language which "necessarily implies

---

[3] *See Rodriguez v. Bostock*, — F. Supp. 3d. —, 2025 WL 2782499, at *1 n.3 (W.D. Wash. Sept. 30, 2025) ("conclud[ing] that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice" and collecting over 20 cases); *Quispe v. Crawford*, Civil Action No. 1:25-cv-1471-AJT-LRV, 2025 WL 2783799, at *6 (E.D. Va. Sept. 29, 2025) ("Petitioner's detention is governed by § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures, as at least thirty federal district courts around the country . . . have concluded when faced with habeas petitions from comparably situated petitioners.").

some sort of present-tense action." *Id.* at \*22 (citing *Al Otro Lado v. Wolf*, 952 F.3d 999, 1011 (9th Cir. 2020) (finding the phrase "*arriving* in the United States" and its "use of the present progressive . . . denotes an ongoing process") (emphasis in original)).

The Court concurs with the other district courts' interpretation of the statutory text and finds that § 1226(a), rather than § 1225(b)(2), applies to Petitioner.  In this case, Petitioner is not seeking admission to the United States under the plain meaning of the statute.  At the time of his arrest, Petitioner had been residing in the United States for over 19 years.  (Doc. 1 at 14.)  Indeed, "[h]e has been living in the United States and has not taken any affirmative act, such as submitting an application for admission to the United States." *Castro v. LaRose*, 25-cv-2645-BAS-BJW, ECF No. 12, at \*7 (S.D. Cal. Nov. 17, 2025).  Petitioner was also "not arrested at the border or a port of entry where he was subject to inspection." *Id.*; *Flores v. Noem*, No. 25-CV-03011-BAS-BLM, 2025 WL 3240807, at \*3 (S.D. Cal. Nov. 20, 2025) (same).  Instead, Petitioner was detained by two unmarked vehicles while he was driving on October 28, 2025.  (Doc. 1 ¶¶ 22, 26.)  He was therefore not "seeking admission" at that time.  *See Martinez*, 792 F. Supp. 3d at 223 (holding "Section 1225(b)(2)(A) . . . simply had no application to [the petitioner's] case" where he had been residing in the United States for years when she was detained).

Accordingly, Petitioner was detained under § 1226(a) because "a proper understanding of the relevant statutes, in light of their plain text, overall structure, and . . . case law interpreting them, compels the conclusion that § 1225's provision for mandatory detention of noncitizens 'seeking admission' does not apply to someone like [Petitioner], who has been residing in the United States for more than" 19 years. *See Lopez Benitez v. Francis*, — F. Supp. 3d —, 2025 WL 2371588, at \*3 (S.D.N.Y. Aug. 13, 2025); *Castro*, 25-cv-2645-BAS-BJW, ECF No. 12, at \*7 ("[The petitioner] was arrested . . . while already in the United States, and thus, is subject to Section 1226.").  Petitioner is thus entitled to a bond hearing under § 1226(a).  In light of the disposition herein, the Court declines to address Petitioner's remaining grounds for relief.

## IV.   CONCLUSION

Based on the foregoing reasons, the Petition (Doc. 1) is **GRANTED IN PART AND DENIED IN PART**.  Accordingly:

1. The Court **ORDERS** that a new individualized bond hearing be held for Petitioner before an immigration judge pursuant to 8 U.S.C. § 1226(a) within fourteen (14) days of this Order.[4]

2. Respondents **SHALL NOT** deny Petitioner's bond on the basis that he is detained under 8 U.S.C. § 1225(b)(2).

3. Counts Two and Three of the Petition are **DENIED AS MOOT WITHOUT PREJUDICE**.  To the extent that Petitioner requests to be released from custody, the Petition is **DENIED**.

4. The Clerk of Court **SHALL** enter judgment and close this case.

**IT IS SO ORDERED**.

DATE:  November 25, 2025

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[4] *See Sadeqi v. LaRose*, — F. Supp. 3d —, 2025 WL 3154520, at *4 (S.D. Cal. Nov. 12, 2025) ("Petitioner is entitled to a prompt and individualized bond hearing, at which Respondents must justify [his] continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released.") (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings*, 583 U.S. 281 (explaining "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond").